UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CIVIL ACTION FILE NO. 7:22-cv-192-D-BM

| | |
|---|---|
| NEAL SHULMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OF LAW** |
| ) | **IN SUPPORT OF** |
| JULIA OLSON-BOSEMAN, NEW ) | **DEFENDANTS' JOINT** |
| HANOVER COUNTY COMMISSION ) | **MOTION TO DISMISS** |
| CHAIRWOMAN; DEB HAYS, VICE ) | **IN LIEU OF AN ANSWER** |
| CHAIRPERSON [NEW] HANOVER ) | |
| COUNTY COMMISSION; BILL ) | |
| RIVENBARK, COMMISSIONER, NEW ) | |
| HANOVER COUNTY COMMISSION; ROB ) | |
| ZAPPLE, COMMISSONER, NEW ) | **(Loc. Civ. R. 7.1(e))** |
| HANOVER COUNTY COMMISSION; ) | |
| WANDA COPLEY, NEW HANOVER ) | |
| COUNTY ATTORNEY; and ) | |
| CHRISTOPHER COUDRIET, NEW ) | |
| HANOVER COUNTY MANAGER, ) | |
| ) | |
| Defendants. ) | |

NOW COME Defendants Julia Olson-Boseman (hereinafter "Chairwoman Olson-Boseman"), Deb Hays (hereinafter "Commissioner Hays"), Bill Rivenbark (hereinafter "Commissioner Rivenbark"), Rob Zapple (hereinafter "Commissioner Zapple"), Wanda Copley (hereinafter "Copley"), and Christopher Coudriet (hereinafter "Coudriet") (hereinafter collectively "Defendants"),[1] by and through the undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7.1(e) of the Local Civil Rules, and respectfully submit this memorandum of law in support of their joint motion to dismiss, filed contemporaneously herewith.

---

[1] The Complaint does not clarify as to whether the Defendants are sued individually, or in their official capacities. [D.E. 1-1].

**STATEMENT OF THE CASE**

Plaintiff Neal Shulman (hereinafter "Plaintiff") initiated the above-captioned action by filing a Complaint, and with multiple exhibits, in the New Hanover County General Court of Justice, Superior Court Division, on October 17, 2022. [D.E. 1-1]. Chairwoman Olson-Boseman, and Commissioners Hayes, Rivenbark, and Zapple were served on October 19, 2022. Copley was served on October 20, 2022. Coudriet was served on October 21, 2022.

On November 14, 2022, Defendants removed this action to the United States District Court for the Eastern District of North Carolina, Eastern Division, pursuant to 28 U.S.C. §1441(a), because Plaintiff has based certain claims for relief under the United States Constitution and 42 U.S.C. § 1983. [D.E. 1-1 pp. 2-4].

Defendants moved for, and were granted, an extension of time in which to respond to the factual allegations contained within the Complaint. [D.E. 10; 12]. This memorandum of law is submitted in support of Defendants' joint motion for summary judgment, filed contemporaneously herewith.

**STATEMENT OF THE FACTS**

The relevant facts,[2] as alleged in the Complaint, and viewed in the light most favorable to Plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421, (1969), are as follows:

**I.    The Parties**

Plaintiff is a resident and citizen of New Hanover County, North Carolina. [D.E. 1-1 p. 1 ¶ 1]. Additionally, Plaintiff owns several rental properties within New Hanover and Pender Counties. [D.E. 1-1 p. 1 ¶ 2]. Chairwoman Olson-Boseman, and Commissioners Hays, Rivenbark, and Zapple, are duly elected members of New Hanover County Board of

---

[2]    The Complaint's factual and legal conclusions, which are not to be considered during a motion to dismiss, Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009), are not presented in this factual recitation.

2

Commissioners (hereinafter "Board"). [D.E. 1-1 p. 1 ¶ 3]. Commissioner Olson-Boseman is the Commission Chair. [D.E. 1-1 p. 1 ¶ 3]. Copley and Coudriet are employees of New Hanover County.[3] [D.E. 1-1 p. 1 ¶ 3].

## II. Rules Of Procedure For The New Hanover County Board Of Commissioners

The Board has adopted a series of rules that govern "all meetings" during which it "is empowered to exercise any of the executive, quasi-judicial, administrative, or legislative powers conferred on it by law[.]" [D.E. 1-1 p. 10]. The rules provide for the election of a Chairperson who is responsible for calling the meetings to order, presiding over the meetings while in session, and closing the meeting at the conclusion of the Board's business. [D.E. 1-1 pp. 10-12]. The rules additionally set forth the order in which business is to be conducted and provide for public comment period for non-agenda items. [D.E. 1-1 p. 12]. Finally, the rules grant the Chairperson with various powers governing the conduct of the debate, including, in relevant part, the power "[t]o determine whether a speaker has gone beyond reasonable standards of courtesy in his or her remarks and to entertain and rule on objections from other member on this ground[.]" [D.E. 1-1 p. 12].

## III. Events Giving Rise To Plaintiff's Claims For Relief

On October 3, 2022, the Board held an open meeting, during which Defendants were all in attendance. [D.E. 1-1 p. 1 ¶ 4]. Plaintiff was present and elected to speak during the public comment period. [D.E. 1-1 p. 2 ¶ 8]. When it was Plaintiff's turn, Chairwoman Olson-Boseman recognized him by announcing his name. [Comp. Ex. B]. Plaintiff approached the podium, adjusted the microphone, then the following exchange occurred:

---

[3] While the Complaint contains no additional allegations regarding either Copley or Coudriet, Plaintiff identifies them as the County Attorney and County Manager, respectively, in the case caption. [D.E. 1-1 p. 1 ¶ 1].

3

Plaintiff: Who in here would enter into a business agreement with Julia Boseman and give her fifty-thousand dollars?

Chairwoman Olson-Boseman (gaveling Plaintiff): And here you're done. Goodbye.

Plaintiff: I'm not done yet.

Chairwoman Olson-Boseman: No. You're excused.

Plaintiff: But yet you have the same thing with Novant . . .

Chairwoman Olson Boseman: Remove him. Remove him. This is not . . . you do not attack me personally, bailiff remove him. Time's up.

[Comp. Ex. B]. Plaintiff then walked away from the podium. [Comp. Ex. B]. The exchange lasted less than 45 seconds. [Comp. Ex. B].

## ARGUMENT

A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citing Jordan v. Alternative Resources Corp., 458 F.3d 332, 338 (4th Cir.2006)). When ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. Hall v. DIRECTV, LLC, 846 F.3d 757, 765 (4th Cir. 2017). "[L]egal conclusions, elements of a cause of action[,] . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments[,]" however, should not be considered. Nemet, 591 F.3d at 255 (internal citations omitted).

The Complaint presents two[4] discernable cautions of action against Defendants. The first is a federal claim, pursuant to 42 U.S.C. 1983, for alleged violations of Plaintiff's right to free speech, as guaranteed by the First Amendment, and made applicable to the state through the

---

[4] The Complaint does not enumerate the causes of action, or otherwise separate them from the factual allegations. See Fed. R. Civ. P. 10(b).

Fourteenth Amendment. [D.E. 1-1 pp. 3-4 ¶ 20, 21, 22]. The second is a State-based claim for alleged violations of Plaintiff's free speech rights, as guaranteed by the North Carolina Constitution. [D.E. 1-1 p. 3 ¶ 15]. The Complaint additionally alleges that Defendants have violated the Board's ethical and procedural rules, [D.E. 1-1 pp. 2, 3, 4 ¶ 12, 16, 18, 23-24], though it is unclear whether these are intended to be separate causes of action. Moreover, the Complaint does not cite to a statute, or principle of common law, that would provide for a private cause of action for these alleged rule violations. As set forth below, Defendants submit that the factual allegations contained in the Complaint fail state to a claim upon which relief may be granted.

I.   **The Complaint Fails To State A Viable First Amendment Claim**

Plaintiff instituted the present action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights to free speech as guaranteed by the First Amendment and made applicable to the States under the Fourteenth Amendment. [D.E. 1-1 pp. 2-4]. 42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere confirmed. Graham v. Connor, 490 U.S. 386, 393 (1985). The terms of § 1983 establish two (2) necessary elements for recovery. First, a plaintiff must prove that a defendant has deprived him of a right secured by the Constitution and laws of the United States. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Second, a plaintiff must show that a defendant deprived him of that constitutional right under color of any statute, ordinance, regulation, custom, or usage, of any state or territory. Id. Defendants respectfully

5

submit that the Complaint has failed to present sufficient factual allegations to demonstrate the depravation of a constitutional right.

### A. Chairwoman Olson-Boseman Did Not Violate Plaintiff's Right To Free Speech

"The Supreme Court has adopted forum analysis as the means of analyzing restrictions placed on private speech that occurs on government property." Goulart v. Meadows, 345 F.3d 239, 248 (4th Cir. 2003) (citing Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998)). "The standards [applied] to determine whether a State has unconstitutionally excluded a private speaker from use of a public forum depend on the nature of the forum." Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106 (2001)). The three recognized types of fora are the traditional public forum, the nonpublic forum, and the limited public forum. Forbes, 523 U.S. at 677; Warren v. Fairfax County, 196 F.3d 186, 193 (4th Cir. 1999) (*en banc*). Public comment periods during government meetings are considered limited public forums. See Steinburg v. Chesterfield Cty. Planning Comm'n, 527 F.3d 377, 385 (4th Cir. 2008) ("[T]he parties agree that the Commission's public meeting was a 'limited public forum,' and we concur in that assessment.").

"When the State establishes a limited public forum, [it] is not required to and does not allow persons to engage in every type of speech." Good News Club, 533 U.S. at 106. "The State may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics.'" Id. (quoting Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995)). In a limited public forum, however, the government still '"must not discriminate against speech on the basis of viewpoint,'[5] and any restriction 'must be reasonable in light of the purpose

---

[5] Viewpoint discrimination "targets not the subject matter, but particular view taken by speakers on a subject." Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995).

6

served by the forum.'" Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five, 470 F.3d 1062, 1067-68 (4th Cir. 2006) (quoting Good News Club, 533 U.S. at 106-07).

> Accordingly, a government entity such as the Commission is justified in limiting its meeting to discussion of specified agenda items and in imposing reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business [as long as it does] not discriminate on the basis of a speaker's viewpoint.

Steinburg, 527 F.3d at 385 (citing Good News Club, 533 U.S. at 106-07; Collinson v. Gott, 895 F.2d 994, 1000 (4th Cir. 1990) (Phillips, J., concurring)).

Under the limited public forum standard, "officials presiding over [board] meetings" have the authority "to cut off speech which they reasonably perceive to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion[.]'" Steinburg, 527 F.3d at 385 (quoting Collinson, 895 F.2d at 1000). This includes "personal attacks," which are "irrelevant" and "lead[ ] almost inevitably to a responsive defense or counterattack and thus to argumentation that has the real potential to disrupt the orderly conduct of the meeting." Steinburg, 527 F.3d at 386-87; see also Davison v. Rose, 19 F.4th 626, 635 (4th Cir. 2021) (policy prohibiting personal attacks held constitutional "because they cause unnecessary delay or disruption to a meeting.").

Here, the Complaint alleges that "Plaintiff's remarks were about funding an institution that he previously claimed was financially irresponsible." [D.E. 1-1 p. 3 ¶ 19]. Plaintiff, however, "ha[d] alternative means of communication to express his ideas about" institutional funding. Davison, 19 F.4th at 636. Moreover, insomuch as the Complaint alleges that Chairwoman Olson-Boseman engaged in viewpoint discrimination, [D.E. 1-1 p. 2 ¶ 9], Plaintiff did not allude to the topic for his remarks, or his position thereon, until after he was excused for personal attacks. [D.E. 1-1 p. 3 ¶ 19; Ex. B]. To that end, "'denying a speaker at the podium in a Commission hearing the right to launch personal attacks does not interfere with what the speaker

7

could say without employing such attacks."' Davison, 19 F.4th at 636 (quoting Steinburg, 527 F.3d at 387).

In sum, "nothing in the First Amendment gives the plaintiff the right to engage in personal attacks upon any member of Council, on the floor of Council's chambers, during a public-comment portion of Council's formal meeting." El-Amin v. West, Civil Action No. 88-0278-R, 1988 U.S. Dist. LEXIS 17511, at *12-13 (E.D. Va. Aug. 9, 1988); see also Minn. State Bd. for Community Colleges v. Knight, 465 U.S. 271, 283 (1984) (noting that there is "no constitutional right to force the government to listen to [one's] views"). As Plaintiff had no right to engage in personal attacks, the Chairwoman cannot be said to violate that right, and the Complaint fails to state a claim upon which relief may be granted.

### B. Even Assuming *Arguendo,* That Chairwoman Olson-Boseman Violated Plaintiff's Rights, The Remaining Defendants Are Not Vicariously Liable

The Complaint alleges that the remaining Defendants were "all complicit (involved with other in an illegal or illicit activity) in [Plaintiff] being denied a Constitutionally protected right[.]" [D.E. 1-1 p. 2 ¶ 11]. The Complaint, however, does not elaborate as to the theory under which Plaintiff seeks to hold the remaining Defendants vicariously liable. To that end, the general rule is that "vicarious liability is inapplicable to . . . § 1983 suits," and as such, "a plaintiff must plead each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. There are two exceptions to this general rule, neither of which are applicable to the present claim.

First, "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), *cert. den*ied, 470 U.S. 1035 (1985);

Orpiano v. Johnson, 632 F.2d 1096 (4th Cir. 1980), *cert. denied*, 450 U.S. 929 (1981); Withers v. Levine, 615 F.2d 158 (4th Cir. 1980)).

> [The] three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 798 (quoting Miltier v. Oeorn, 896 F.2d 848, 854 (4th Cir. 1990)). Here, supervisory liability is inapplicable as none of the remaining Defendants are alleged to have a supervisory role over Chairwoman Olson-Boseman.

Next, the doctrine of bystander liability "recognizes that, in certain limited situation, bystanding officers are obliged to act." Randall v. Prince George's Cty., 302 F.3d 188, 204 (4th Cir. 2002).

> To succeed on a theory of bystander liability, a plaintiff must demonstrate that a law-enforcement officer "(1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act."

Stevenson v. City of Seat Pleasant, 743 F.3d 411, 417 (4th Cir. 2014) (quoting Randall, 302 F.3d at 204). However, the Fourth Circuit has cautioned "that bystander liability is only appropriate in 'certain limited circumstances[.]'" Swagler v. Sheridan, Civil Action No. RDB-08-2289, 2011 U.S. Dist. LEXIS 71766, at *26-30 (D. Md. July 5, 2011) (quoting Randall, 302 F.3d at 204). In particular, "the Fourth Circuit's decision in Randall and other cases applying bystander liability show that the theory *applies only to law enforcement officers* because of their 'duty to uphold the law and protect the public from illegal acts.'" Murphy v. Fields, No. 3:17-2914-CMC-PJG, 2018

U.S. Dist. LEXIS 47505, at *5-6 (D.S.C. Mar. 5, 2018) (emphasis added) (citing Randall, 302 F.3d at 203).

Here, the Complaint contains not allegations that would suggest that the remaining Defendants were sworn law enforcement officers or otherwise served in supervisory capacities over Chairwoman Olson-Bosman. As such, even assuming *arguendo* that the Chairwoman's actions were constitutionally violative, the remaining Defendants cannot be held liable for the same.

II. **Defendants Did Not Violate Plaintiff's Rights Under The North Carolina Constitution**[6]

"The civil rights guaranteed by the Declaration of Rights in Article I of [the North Carolina] Constitution are individual and personal rights entitled to protection against state action[.]" Corum, 330 N.C. at 782, 413 S.E.2d at 289. To that end, the North Carolina Constitution provides that "[f]reedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse." N.C. Const. Art. I, § 14. "The words 'shall never be restrained' are a direct personal guarantee of each citizen's right of freedom of speech." Corum, 330 N.C. at 781, 413 S.E.2d at 289.

"[I]n construing provisions of the Constitution of North Carolina, [the North Carolina Supreme] Court is not bound by opinions of the Supreme Court of the United States construing even identical provisions in the Constitution of the United States." State v. Hicks, 333 N.C. 467, 483, 428 S.E.2d 167, 176 (1993); State v. Arrington, 311 N.C. 633, 642, 319 S.E.2d 254, 260 (1984). Nonetheless, the North Carolina Supreme Court, "'give[s] great weight to the decisions of the Supreme Court of the United States interpreting provisions of the Constitution of the

---

[6] To the extent that the Court determines that the Complaint asserts individual capacity claims, Plaintiff is prohibited from recovering monetary damages. See Corum, 330 N.C. at 787-88, 413 S.E.2d at 292-93.

United States which are parallel to provisions of the State Constitution to be construed.'" State v. Petersilie, 334 N.C. 169, 184, 432 S.E.2d 832, 841 (1993) (quoting Hicks, 333 N.C. at 483, 428 S.E.2d at 176); see also Young v. Bailey, 386 N.C. 665, 670, 781 S.E.2d 277, 280 (2016) ("this Court has given great weight to the First Amendment jurisprudence of the United States Supreme Court.") (citing Petersilie, 334 N.C. at 184, 432 S.E.2d at 841).

In the absence of any "authority that Article I § 14 of the North Carolina Constitution affords broader protection to freedom of speech . . . than does the First Amendment to the U.S. Constitution, the Court [should] consider Plaintiff's state and federal free speech claims according to the same . . . test." Dewitt v. Mecklenburg Cty., 73 F. Supp. 2d 589, 606 n.12 (W.D.N.C. 1999) (citing Petersilie, 334 N.C. at 184, 432 S.E.2d at 841 ("for the purpose of applying our State Constitution's Free Speech Clause we adopt the United States Supreme Court's First Amendment jurisprudence.")). As such, Plaintiff Article I § 14 claim fails for the same reasons as does his § 1983 claim.

**III. The Complaint Fails To State A Claim Under North Carolina Common Law**

While not set forth as a separate, enumerated claim, the Complaint intimates a cause of action for "being denied a Constitutionally protected right to express his comments to th[e] committee which were within the standards expressed in N.C.G.S. [§] 160A-81.1." [D.E. 1-1 p. 2 ¶ 11]. Insomuch as the Court interprets this language as asserting and additional claim for relief, neither the statute, nor the rules derived therefrom, provide Plaintiff with a private cause of action.

    **A. The Governing Statute And New Hanover County's Corresponding Rules Do Not Provide Plaintiff A Private Cause Of Action**

As a preliminary matter, the Complaint asserts that N.C.G.S. § 160A-81.1 governs the establishment and enforcement of public comment rules for county board meetings. [D.E. 1-1 pp.

11

1-2 ¶¶ 5, 11]. This is incorrect. N.C.G.S. § 160A-81.1 governs municipal council meetings, not county board meetings. See N.C.G.S. § 160A *et seq*. That being said, the relevant language of the controlling statute is virtually identical.

> The board of commissioners shall provide at least one period for public comment per month at a regular meeting of the board. The board may adopt reasonable rules governing the conduct of the public comment period, including, but not limited to, rules (i) fixing the maximum time allotted to each speaker, (ii) providing for the designation of spokesmen for groups of persons supporting or opposing the same positions, (iii) providing for the selection of delegates from groups of persons supporting or opposing the same positions when the number of persons wishing to attend the hearing exceeds the capacity of the hall, and (iv) providing for the maintenance of order and decorum in the conduct of the hearing. The board is not required to provide a public comment period under this section if no regular meeting is held during the month.

N.C.G.S. § 153A-52.1.

"[A] statute may authorize a private right of action either explicitly or implicitly, though typically, a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute." United Daughters of the Confederacy v. City of Winston-Salem, 2022 N.C. LEXIS 1104, at *48, 2022-NCSC-143, ¶ 47 (2022) (quoting Sykes v. Health Network Solutions, Inc., 372 N.C. 326, 338, 828 S.E.2d 467 (2019) (cleaned up)). "[A]n implicit right of a cause of action exists when a statute requires action from a party, and that party has failed to comply with the statutory mandate." Sugar Creek Charter Sch., Inc. v. Charlotte-Mecklenburg Bd. of Educ., 195 N.C. App. 348, 355, 673 S.E.2d 667, 673 (2009) (citing Lea v. Grier, 156 N.C. App. 503, 508-09, 577 S.E.2d 411 (2003)).[7] Whether explicit or implicit, a "'plaintiff has standing to vindicate the legal right so long as he is in the class of persons on whom the statute confers a cause of action.'" United Daughters, 2022 N.C. LEXIS

---

[7] Earlier this month, the North Carolina Supreme Court elected not to clarify whether the North Carolina Court of Appeals articulated the appropriate standard upon which to determine whether a statute grants an implicit cause of action. See United Daughters, 2022-NCSC-143, ¶ 48 ("[A]ssuming, without deciding, that the Court of Appeals has correctly identified the circumstances under which a statute implicitly authorizes a private cause of action in Sugar Creek Charter School").

1104, at *48, 2022-NCSC-143, ¶ 47 (quoting Comm. to Elect Forest v. Emps. PAC, 376 N.C. 558, 607, 853 S.E.2d 698, 733 (2021)).

Returning to the case *sub judice*, nothing in N.C.G.S. § 153A-52.1 explicitly authorizes a private cause of action. Therefore, Plaintiff must demonstrate that the Board "failed to comply with the statutory mandate." Sugar Creek, 195 N.C. App. at 355, 673 S.E.2d at 673. However, the governing statute requires only that the Board "provide at least one period for public comment per month[.]" N.C.G.S. § 153A-52.1. It does not provide additional protections to those who elect to speak during the public comment period. Specifically, it does not require Board members to suffer personal attacks from disgruntled citizens. Thus, the Board, in providing a public comment period, [D.E. 1-1 pp. 1-2 ¶¶ 4-8], fully complied with its obligations under the governing statute. As such, even assuming *arguendo* that N.C.G.S. § 153A-52.1 created an implicit cause of action, the Chairwoman's interpretation and enforcement of the rules established thereunder fails to state a claim.

### B. New Hanover County Is Entitled To Governmental Immunity

"'[G]overnmental immunity serves to protect a municipality, as well as its officers or employees who are sued in their official capacity, from suits arising from torts committed while the officers or employees are performing a governmental function.'" Fullwood v. Barnes, 250 N.C. App. 31, 37, 792 S.E.2d 454, 550 (2016) (quoting Schlossberg v. Goins, 141 N.C. App. 436, 439, 540 S.E.2d 49, 52 (2000)). "'Governmental immunity is 'absolute unless [a] [county] has consented to suit or otherwise waived its right to immunity.'" Fullwood, 250 N.C. App. at 37, 792 S.E.2d at 550 (quoting Schlossberg, 141 N.C. App at 439, 540 S.E.2d at 52). A county "may waive immunity by the purchase of liability insurance, thereby subjecting itself to liability for the tortious acts of its officers and employees." Mellon v. Prosser, 126 N.C. App. 620, 622,

486 S.E.2d 439, 441 (1997), rev'd in part on other grounds, 347 N.C. 568, 494 S.E.2d 763 (1998); White v. Cochran, 229 N.C. App. 183, 189, 748 S.E.2d 334, 339 (2013) (citing Phillips v. Gray, 163 N.C. App. 52, 56, 592 S.E.2d 229, 232 (2004)).

However, "[a] plaintiff seeking to overcome a governmental immunity defense must specifically allege that the official or governmental entity has waived the right to rely on such an immunity-related defense." White v. Cochran, 229 N.C. App. 183, 189, 748 S.E.2d 334, 339 (2013) (citing Phillips v. Gray, 163 N.C. App. 52, 56, 592 S.E.2d 229, 232 (2004). Absent such an allegation, the complaint fails to state a cause of action. Warrant v. Guilford County, 129 N.C. App. 836, 839, 500 S.E.2d 470 472, rev. denied, 379 N.C. 241, 516 S.E.2d 610 (1998). Here, the Complaint contains no factual allegations that would establish a waiver of immunity. [D.E. 1-1]. In the absence of such allegations, the Complaint is legally insufficient, and Defendants are entitled to dismissal of any State-based official capacity claims. Walker, 137 N.C. App. at 392, 529 S.E.2d at 241; Warrant, 129 N.C. App. at 839, 500 S.E.2d at 472.

  **C.** **Defendants Are Entitled To Public Official Immunity**

The defense of public official immunity is a "derivative form" of governmental immunity. Epps v. Duke Univ., Inc., 122 N.C. App. 198, 203, 468 S.E.2d 846, 850 (1996). "A public official is one who exercises some portion of sovereign power and discretion, whereas public employees perform ministerial duties." Dalenko v. Wake Cty. Dep't of Human Servs., 157 N.C. App. 49, 55, 578 S.E.2d 599, 603, writ denied, 585 S.E.2d 380 (2003). Law enforcement officers are public officials for the purposes of public official immunity. See Schlossberg v. Goins, 141 N.C. App. 436, 445, 540 S.E.2d 49, 56 (2000).

"Public official immunity precludes suits against public officials in their individual capacities and protects them from liability '[a]s long as a public officer lawfully exercises the

14

judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption[.]'" Fullwood v. Barnes, 250 N.C. App. 31, 38, 792 S.E.2d 545, 550 (2016) (quoting Smith v. State, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976). "Thus, a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." Wilcox v. City of Asheville, 222 N.C. App. 285, 288, 730 S.E.2d 226, 230 (2012), disc. review denied and appeal dismissed, 366 N.C. 574, 738 S.E.2d 363 (2013).

"A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984); see also Fullwood, 250 N.C. App. at 38, 792 S.E.2d at 550 ("A malicious act is one which is: '(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another.'") (quoting Wilcox, 222 N.C. App. at 289, 730 S.E.2d at 230). However, "it will always be presumed that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." Mitchell v. Pruden, 251 N.C. App. 554, 559-60, 796 S.E.2d 77, 82 (2017) (quoting Strickland v. Hedrick, 194 N.C. App. 1, 10, 669 S.E.2d 61, 68 (2008)). "This presumption places a heavy burden on the party challenging the validity of public officials' actions[.]" Id. "'Any [allegation] presented to rebut this presumption must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise.'" Mitchell, 251 N.C. App. at 560, 796 S.E.2d at 82 (quoting Fullwood, 250 N.C. App. at 38, 792 S.E.2d at 550–51). Defendants respectfully submit that the Complaint presents no factual allegations that would suggest that they acted outside of the scope of their official duties, or with malicious or corrupt intent. As such, Defendants respectfully submit that

they are entitled to public official immunity as to any State-based individual capacity claims asserted against them. Fullwood, 250 N.C. App. at 38, 792 S.E.2d at 550.

## CONCLUSION

For the reasons set forth herein above, Defendants submit that the Complaint fails to state a claim upon which relief may be granted and that they are entitled to dismissal as a matter of law.

Respectfully submitted, this the 29th day of December, 2022.

        SUMRELL SUGG, P.A.
        *Attorneys for Defendants*

BY:   /s/Frederick H. Bailey, III
        State Bar No. 36603
        Post Office Drawer 889
        New Bern, North Carolina 28563
        Telephone: (252) 633-3131
        Fax: (252) 633-3507
        E-Mail: fbailey@nclawyers.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the **NOTICE TO ADVERSE PARTY OF FILING OF NOTICE OF REMOVAL** was served upon all parties to this action by depositing the same in a postpaid wrapper in an official depository under the exclusive care and custody of the United States Postal Service, New Bern, North Carolina, and addressed to:

>Richard P. Theokas, Esq.
>THEOKAS LAW FIRM, PC
>Post Office Box 3971
>Wilmington, North Carolina 28406
>*Attorney for Plaintiff*

This the 29th day of December, 2022.

>SUMRELL SUGG, P.A.
>*Attorneys for Defendants*
>
>BY:  /s/Frederick H. Bailey, III
>     State Bar No. 36603
>     Post Office Drawer 889
>     New Bern, North Carolina 28563
>     Telephone: (252) 633-3131
>     Fax: (252) 633-3507
>     E-Mail: fbailey@nclawyers.com